United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ZYNGA, INC.,<br><br>    Plaintiff /<br>    Counter-defendant,<br><br>   v.<br><br>VOSTU USA, INC., VOSTU LLC,<br>VOSTU, LTD.,<br><br>    Defendants /<br>    Counter-claimants. | Case No. 11-CV-02959-EJD<br><br>**OPINION RE ORDER DISSOLVING TEMPORARY RESTRAINING ORDER AND DENYING PRELIMINARY INJUNCTION**<br><br>[Re: ECF Nos. 22, 60, 80] |

This matter came before the Court on August 23, 2011, upon an order to show cause why Vostu's requested preliminary injunction should not be entered. For the reasons set forth below, the previously-issued temporary restraining order is dissolved, the order to show cause is discharged, and no preliminary injunction will issue.

I. BACKGROUND

Zynga and Vostu[1] make and host games that people play with their friends on social platforms like Facebook. Zynga filed the instant action (the "U.S. action") on June 16, 2011, claiming that five of Vostu's games infringe U.S. copyrights that Zynga holds in five of its own

---

[1] This Order refers to the named defendants collectively as "Vostu." Vostu, Ltd. is the parent company of Vostu USA, Inc. and Vostu LLC, its U.S. subsidiaries. The Complaint also names Vostu, LLC (with a comma) as a defendant, but that entity has not been served and has transferred all of its assets to either Vostu, Ltd. (according to Kafie Decl. ¶ 3, ECF No. 27) or to Vostu LLC (no comma) (according to the Mem. P. & A. ISO Ex Parte App. for TRO, ECF No. 23). Any distinction between Vostu LLC and Vostu, LLC is not important for the purposes of this Order, so the entities will be treated as one and the same.

Vostu, Ltd. is also the parent company of Brazil-based Vostu Participações do Brasil Ltda ("Vostu Brazil"), which is not a party to this case.

games. Vostu raises a number of affirmative defenses, and it counterclaims for declaratory judgment of noninfringement.

On August 2, Zynga initiated a separate lawsuit in Brazil (the "Brazilian action") based on two causes of action: copyright infringement under Brazilian law, and *concorrência desleal*, a Brazilian species of unfair competition. (Luedtke Decl. Ex. J, Aug. 8, 2011, ECF No. 24.) The Brazilian Action involves four of the five games at issue in this case, and names two of the three defendants which are before this Court.[2] On August 3, without notice to Vostu, Zynga sought and obtained a preliminary injunction from the Brazilian court (the "Brazilian injunction") ordering the defendants in that action "to cease the use, exhibition, edition, reproduction, distribution, sale, offer for sale, vehicleing or making available" of the four games within 48 hours. (Luedtke Decl. Ex. L.) The injunction included no provision limiting its geographical scope. Upon learning of the injunction, Vostu Brazil asked the Brazilian court to reconsider its decision. The court declined, but did extend the deadline for Vostu to comply with the order until August 12. (Luedtke Decl. Ex. N.)

On August 8, four days before the Brazilian injunction went into effect, Vostu filed an ex parte application for a temporary restraining order with this Court. (Defs.' Ex Parte Mot. TRO, ECF No. 22.) The application requested that Zynga be barred from enforcing the Brazilian injunction, and that Zynga be required to stay the litigation it initiated in Brazil until the instant action is resolved. The Court solicited and received briefing from Zynga. (Order Setting Deadline for Pls. to Respond, Aug. 8, 2011, ECF No. 28; Pl.'s Opp. TRO, Aug. 10, 2011, ECF No. 29.)

On August 11, upon review of the parties' written filings, this Court found that the parties had raised serious questions as to the propriety of an anti-suit injunction and granted Vostu's application in part. (Order Granting in Part Mot. TRO, ECF No. 60.) The TRO that issued was more limited in scope than the one Vostu had requested: while Zynga was enjoined from enforcing the Brazilian injunction, it was free to continue pursuing the Brazilian action. (Id.) Concurrent with the TRO, the Court issued an Order to Show Cause why Vostu's original proposed preliminary injunction should not issue. (Id.) The Court invited additional briefing on the issues specific to anti-

---

[2] The Brazilian action names four defendants: Vostu, Ltd., Vostu USA, Inc., Vostu Brazil, and Google's Brazilian subsidiary.

suit injunctions, and heard argument on the matter on August 23. At the August 23 hearing, the TRO was extended to August 26. (Min. Entry, ECF No. 81.)

All the while, Vostu pursued an appeal of the injunction in Brazil. On August 15, an appeals court in São Paolo stayed the Brazilian injunction pending resolution of Vostu's interlocutory appeal. At the preliminary injunction hearing before this Court, the parties agreed that the interlocutory appellate review will likely take "months" to resolve. (Tr. of Proceedings Held on Aug. 23, 2011 at 20:13–19, 33:12–19, ECF No. 82).

## II. LEGAL STANDARDS

To obtain preliminary injunctive relief, a party ordinarily must demonstrate (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in her favor, and (4) that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). The Ninth Circuit has developed a corollary to this test: a preliminary injunction may be appropriate if there are "serious questions going to the merits" and the balance of the hardships tips sharply in the applicant's favor, so long as the applicant also shows, as Winter requires, that the injunction is in the public interest and that irreparable injury is likely. Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1052 (9th Cir. 2010). This approach allows for preservation of the status quo where complex legal questions require further inspection or deliberation.

Where the injunction sought would prevent a party from litigating similar claims in a foreign court, the standard is different. To obtain an anti-suit injunction, the applicant is not required to show a likelihood of success on the merits of the underlying claim. Rather, it need only demonstrate that the factors specific to an anti-suit injunction weigh in its favor. E. & J. Gallo Winery v. Andina Licores S.A., 446 F.3d 984, 991 (9th Cir. 2006). Those factors are: (1) whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined;

(2) whether the foreign litigation would frustrate a policy of the forum issuing the injunction;[3] and (3) whether the impact on comity would be tolerable. Applied Med. Distribution v. Surgical Co. BV, 587 F.3d 909, 913 (9th Cir. 2009) (citing Gallo, 446 F.3d at 991, 994).[4]

III. ANALYSIS

The August 11 TRO issued on the basis of "serious questions" as to whether an anti-suit injunction is warranted in this case. The parties briefed the issue further, and this Order considers and resolves those serious questions against the issuance of a preliminary injunction.

A. Effect of the U.S. Action on the Brazil Action

"Whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined" is a threshold question in the anti-suit injunction analysis. Applied Medical Distribution, 587 F.3d at 918; Gallo, 446 F.3d at 991.

1. Whether the Parties are the Same in the U.S. and Brazil Actions

Perfect identity of parties is not required for an anti-suit injunction. Rather, it suffices that the parties be affiliated in such a way that their interests coincide. See, e.g., Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd., 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006).

---

[3] The Gallo court indicated that a showing of the second factor could be replaced by any of the other three rationales anticipated by In re Unterweser Reederei Gmbh, 429 F.2d 888, 896 (5th Cir. 1970), aff'd on reh'g en banc, 446 F.2d 907 (1971). 446 F.3d at 990, 991. That is, a showing that the foreign litigation frustrates a policy of the forum issuing the injunction could be replaced by a showing that the foreign litigation would be vexatious or oppressive, would threaten the issuing court's *in rem* or *quasi in rem* jurisdiction, or where the proceedings prejudice other equitable considerations. Id. (citing Seattle Totems Hockey Club, Inc. v. NHL, 652 F.2d 852, 855 (9th Cir. 1981)).

[4] It is arguably unclear from the Ninth Circuit case law whether the three anti-suit injunction factors replace all four Winter preliminary injunction factors, or whether they replace only the requirement that the movant show a likelihood of success on the merits of the underlying claim. See Gallo, 446 F.3d at 991 ("[Movant] need not meet the usual test of a likelihood of success on the merits of the underlying claim to obtain an anti-suit injunction . . . . Rather, [movant] need only demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction."). Under a literal reading of Gallo, a showing of irreparable harm, balance of equities, and public interest might still be required to obtain an anti-suit injunction. But the absence of any mention of the Winter factors by the Applied Medical Distribution court suggests otherwise. The Third Circuit expressly supports the replacement of all four Winter factors. See Stonington Partners, Inc. v. Lernout & Hauspie Speech Products N.V., 310 F.3d 118, 128–29 (3d Cir. 2002). Since in this case the three anti-suit injunction requirements are not met, resolving the ambiguity is unnecessary.

1   The table below summarizes the parties in the two pending actions.

|  | U.S. Action | Brazil Action |
|---|---|---|
| Zynga, Inc. | Plaintiff | Plaintiff |
| Vostu, Ltd. | Defendant | Defendant |
| Vostu USA, Inc. | Defendant | Defendant |
| Vostu LLC | Defendant | — |
| Vostu Brazil | — | Defendant |
| Google Brazil | — | Defendant |

The interests of the defendants in the two actions substantially coincide. As a practical matter, the absence of Vostu LLC from the Brazil action will have no effect on whether the U.S. action might dispose of the Brazilian one. Vostu LLC does not appear to conduct any business or own any assets, and the complaint does not allege any facts against Vostu LLC specifically. (See Kafie Decl. ¶ 3, Aug. 8, 2011, ECF No. 27.)

Likewise, the presence of the Brazilian affiliates of Vostu and Google does not defeat "sameness." Vostu Brazil is held in trust for Vostu, Ltd. by Vostu, Ltd.'s CEO, Daniel Kafie. (Kafie Decl. ¶ 4.) Google's Brazilian affiliate is only named in the Brazil action to comply with Brazilian procedural law. (Luedtke Decl. Ex. J ¶ 22.) The Brazilian complaint specifically exempts Google Brazil from its prayer for damages; the only relief sought against Google Brazil is an injunction ordering the takedown of Vostu's games. (Id. ¶ 79.)

Accordingly, in the temporary restraining order, this Court held that the parties in the Brazil and U.S. actions are sufficiently "the same" to issue an anti-suit injunction. The TRO invited further factual showings to rebut the conclusion made in the TRO, but none were made. The holding therefore stands.

2. Whether the Issues are the Same in the U.S. and Brazil Actions

Anti-suit injunctions are only appropriate when the domestic action is capable of disposing all of the issues in the foreign action. Applied Medical Distribution, 587 F.3d at 915. When the parties in the two actions are the same, the two questions of whether "the issues are the same" and whether "the domestic action is dispositive of the foreign action" collapse into one. Id.

5
CASE NO. 11-CV-02959-EJD
ORDER DISSOLVING TRO AND DENYING PRELIMINARY INJUNCTION

1    Vostu argues that the purportedly copyrighted works and the alleged acts of copying are the
2 same in both actions, and that Brazilian and American copyright law are essentially the same in all
3 relevant respects. Vostu points to a recent Ninth Circuit case which holds that the issues need not be
4 "identical," but only "functionally the same." Id. at 915–16.

5    Zynga responds that because copyright law is not extraterritorial, the U.S. action (which
6 pleads only U.S. law) is incapable of resolving infringement under foreign law. Intellectual property
7 rights, it contends, can be pursued in parallel because they are grants from separate sovereign states
8 rather than rights created by the parties themselves, for example by contract. Zynga argues in the
9 alternative—even if copyright actions are not different per se between countries—that Brazil and
10 U.S. copyright laws are sufficiently different that resolving a U.S. copyright infringement claim
11 would not necessarily dispose of a related Brazilian copyright claim.

12    Vostu does not cite—and this Court has not found—any decision of a U.S. district court
13 enjoining a party from pursuing copyright litigation abroad. Rather, federal courts around the
14 country have considered anti-suit injunctions of parallel proceedings in a variety intellectual
15 property contexts and have uniformly concluded that such injunctions are improper. "Unlike most
16 cases upholding the use of antisuit injunctions, the dispute at bar does not arise from a contract and
17 thus raise the specter of inconsistent interpretations of the same document. . . . Intellectual property
18 issues, in contrast, involve separate and independent rights arising from the unique laws of each
19 nation." Black & Decker Corp. v. Sanyei America Corp., 650 F. Supp. 406, 409 (N.D. Ill. 1986)
20 (copyright and trademark); accord Microsoft Corp. v. Lindows.com, Inc., 319 F. Supp. 2d 1219,
21 1222 (W.D. Wash. 2004) (trademark); Computer Assocs. Int'l, Inc. v. Altai, Inc., 950 F. Supp. 48,
22 54 (E.D.N.Y. 1996) (copyright), aff'd, 126 F.3d 365 (2d Cir. 1997).

23    Vostu attempts to distinguish the raft of cases denying anti-suit injunctions by making a
24 showing that the copyright laws of Brazil and the United States are essentially the same with respect
25 to the issues involved in this case.[5] Zynga engages with this argument, and the parties have
26 undertaken a lengthy comparative analysis—complete with expert declarations—of the two

---

[5] The potential viability of such an approach was suggested in Zimnicki v. Neo-Neon International, Ltd., 2009 WL 2392065 at *3 (N.D. Ill. July 30, 2009).

countries' regimes.

But the same reasoning that led the <u>Black & Decker</u> and <u>Microsoft</u> courts to deny anti-suit injunctions applies here. Copyright law, like trademark law, is not extraterritorial. <u>See</u> <u>Subafilms, Ltd. v. MGM-Pathe Communications Co.</u>, 24 F.3d 1088, 1094 (9th Cir. 1994) (<u>en banc</u>). The <u>Applied Medical Distribution</u> standard that the issues need only be "functionally the same" still requires that the foreign claims must be able to "be litigated and resolved" in the domestic forum. 587 F.3d at 914. <u>Subafilms</u> explicitly disapproved the notion of applying foreign copyright law in U.S. courts. <u>See</u> 24 F.3d at 1095 & n.10.

Moreover, the U.S. action has no hope of disposing of any claims arising under the Brazilian *concorrência desleal* (unfair competition) law. Enjoining Zynga from pursuing the Brazilian action would deprive Zynga of the rights it has under that law and would interfere with the Brazilian public policy that law protects.

In the context of an anti-suit injunction, this Court finds that a U.S. copyright claim is not the "same" as a copyright claim arising under foreign law. As a result, the issue of whether Brazilian copyright law in particular is similar to U.S. law need not be addressed. Since the anti-suit injunction threshold requirement that the instant claims dispose of the foreign claims is not met, the remaining two factors—frustration of a policy of this forum and the impact on comity—need not be reached either.

B. Other Injunction Factors

On Vostu's application for the temporary restraining order, the Court found that 1) the parties had raised serious questions as to the <u>Applied Medical Distribution</u> anti-suit injunction factors, 2) Vostu faced immediate and irreparable harm, 3) the balance of hardships tipped sharply in Vostu's favor, and 4) that the public interest did not weigh heavily in either party's favor.

As noted above at note 4, the extent to which the traditional injunction factors apply in the context of anti-suit injunctions is unclear under the current case law. Because Vostu cannot meet the requirements specific to an anti-suit injunction, the request for a preliminary injunction would be denied whether or not the other <u>Winter</u> factors must also be satisfied. Even so, the Court notes a few changes in the circumstances that led to the granting of the TRO.

Because the Brazilian injunction is now stayed pending appeal, and because that appeal is expected to take a few months, the harm that Vostu faces is less immediate. Additionally, the balance of hardships no longer tips quite so sharply in Vostu's favor. At the time the TRO issued, Vostu faced an injunction which Zynga had obtained ex parte without any opportunity for Vostu to respond. Now, Vostu is actively involved with the Brazilian litigation: it is represented by Brazilian counsel and has obtained the stay of that injunction pending appeal. Finally, the hardship to Zynga created by a preliminary injunction is substantially greater than that generated by a TRO because of the preliminary injunction's longer and less definite term.

## IV. ORDER

An anti-suit injunction is not warranted in this case. Accordingly, on August 26, the previously-issued temporary restraining order was dissolved, the accompanying order to show cause was discharged, and Vostu's application for a preliminary injunction was denied. (Order, ECF No. 85.) The foregoing opinion is incorporated as the basis for that order, which is reaffirmed. The clerk is directed to terminate Zynga's Motion for Leave to File Reply Brief (ECF No. 80, Aug. 22, 2011) as moot.

**IT IS SO ORDERED.**

Dated: September 16, 2011

EDWARD J. DAVILA
United States District Judge