1  RONALD L. OLSON (SBN: 044597)
   Ron.Olson@mto.com
2  KELLY M. KLAUS (SBN: 161091)
   Kelly.Klaus@mto.com
3  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, 35th Floor
4  Los Angeles, CA  90071-1560
   Telephone: (213) 683-9100
5  Facsimile:  (213) 687-3702

6  CAROLYN HOECKER LUEDTKE (SBN: 207976)
   Carolyn.Luedtke@mto.com
7  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, 27th Floor
8  San Francisco, CA  94105
   Telephone: (415) 512-4000
9  Facsimile:  (415) 512-4077

10 ANDREW P. BRIDGES (SBN: 122761)
   abridges@winston.com
11 JENNIFER A. GOLINVEAUX (SBN: 203056)
   jgolinveaux@winston.com
12 WINSTON & STRAWN LLP
   101 California Street
13 San Francisco, CA  94111-5894
   Telephone: (415) 591-1000
14 Facsimile: (415) 591-1400

15 Attorneys for Defendants
   VOSTU USA, INC., VOSTU LLC, AND VOSTU, LTD.

16

17                UNITED STATES DISTRICT COURT

18                NORTHERN DISTRICT OF CALIFORNIA

19                      SAN JOSE DIVISION

20 ZYNGA INC.,                     CASE NO. CV 11-2959 EJD
              Plaintiff,
21                                 VOSTU'S MEMORANDUM OF POINTS
       v.                          AND AUTHORITIES OPPOSING
22                                 ZYNGA'S MOTION TO DISMISS OR
   VOSTU USA, INC., et al.,        STRIKE COUNTERCLAIMS
23            Defendants.

24                                 DATE: February 17, 2012
                                   TIME: 9:00 a.m.
25 AND COUNTERCLAIMS                PLACE: Courtroom 1, 5th Floor

26

27

28

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................1

II. FACTUAL BACKGROUND..................................................................................................3

III. ARGUMENT ...........................................................................................................................5

    A. Legal Standard:  The Application of Rules 12(b)(6) and 12(f) ....................................5

    B. Vostu's Counterclaims Are Appropriate and Valuable in This Case. ...........................6

        1. Many Courts, Including the Ninth Circuit and This Court, Endorse So-Called "Mirror Image" Counterclaims............................................................6

        2. The Federal Rules Support Declaratory Relief Counterclaims.........................7

        3. Counterclaims Authorize a Defendant to Insist on a Resolution of the Issues. ..............................................................................................................8

        4. In Intellectual Property Cases Such As This One, Counterclaims for a Declaration of Non-Liability Are Particularly Valuable. .................................9

        5. Sound Case Management Favors Vostu's Counterclaims. .............................10

    C. It Is Particularly Inappropriate to Strike Declaratory Relief Counterclaims Before Factual Development. .......................................................................................11

IV. CONCLUSION......................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aldens, Inc. v. Packel*,
   524 F.2d 38 (3rd Cir. 1975) ...................................................................................................11

*Atlantic Recording Corp. v Serrano*,
   2007 U.S. Dist. LEXIS 95203 (S.D. Cal. Dec. 28, 2007)..........................................................9

*Avery Dennison Corp. v. Acco Brands, Inc.*,
   No. CV 99-1877 DT, 2000 WL 986995 (C.D. Cal. Feb. 22, 2000) ........................................11

*Caplan v. Am. Baby, Inc.*,
   582 F. Supp. 869 (S.D.N.Y. 1984).............................................................................................7

*Castaline v. Aaron Muellers Arts*,
   No. C 09-02543 CRB, 2010 WL 583944 (N.D. Cal. Feb. 16, 2010) ...............................1, 7, 9

*Cruz v. Dollar Tree Stores, Inc.*,
   No. 07-2050, 2007 WL 2729214 (N.D. Cal. Sep. 18, 2007) .....................................................5

*Dominion Elec. Mfg. Co. v. Edwin L. Wiegand Co.*,
   126 F.2d 172 (6th Cir. 1942) ..........................................................................................7, 9, 10

*Echostar Satellite LLC v. Freetech Inc.*,
   No. C 07-06124 (JW), 2008 U.S. Dist. LEXIS 123261 (N.D. Cal. May 8, 2008) ........1, 7, 8, 9

*Employer Ins. of Wausau v. Pacer Int'l, Inc.*,
   No. 04-4563, 2005 WL 61481 (N.D. Ill. Jan. 11, 2005).....................................................8, 10

*Federal Deposit Ins. Corp. v. Bancinsure, Inc.*,
   770 F. Supp. 496 (D. Minn. 1991)..........................................................................................11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991).................................................................................................................3

*In re Wal-Mart Stores, Inc. Wage and Hour Litigation*,
   505 F. Supp. 2d 609 (N.D. Cal. 2007) .....................................................................................6

*Infa-Lab, Inc. v. KDS Nail Int'l*,
   No. 2:07-01270 WBS WFB, 2008 WL 4793305 (E.D. Cal. Oct. 27, 2008) ..........................11

*Int'l Woodworkers of Am. v. McCloud River Lumber Co.*,
   119 F. Supp. 475 (N.D. Cal. 1953) ......................................................................................6, 7

*Interscope Records v. Duty*,
   No. 05-CV-3744-PHX-FJM, 2006 U.S. Dist. LEXIS 20214 (D. Ariz. April 14, 2006) ...........9

*Interscope Records v. Kimmel*,
 No. 3:07-CV-0108, 2007 U.S. Dist. LEXIS 43966 (N.D.N.Y. June 18, 2007) ........................ 9

*Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc.*,
 457 F. Supp. 1158 (E.D. Pa. 1978) ........................................................................................ 7

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
 232 F.3d 979 (9th Cir. 2000) ................................................................................................. 5

*Maulsby v. Conzevoy*,
 161 F.2d 165 (9th Cir. 1947) ............................................................................................. 1, 6

*Oneida Tribe of Indians of Wis. v. Village of Hobart*,
 500 F. Supp. 2d 1143 (E.D. Wis. 2007) ............................................................................ 7, 11

*Rayman v. Peoples Sav. Corp.*,
 735 F. Supp. 842 (N.D. Ill. 1990) ........................................................................................ 11

*Schneider v. California Dept. of Corrections*,
 151 F.3d 1194 (9th Cir. 1998) ............................................................................................... 5

*Stickrath v. Globalstar, Inc.*,
 No. C07-1941 TEH, 2008 WL 2050990 (N.D. Cal. May 13, 2008) .................................... 11

*U.S. v. Redwood City*,
 640 F.2d 963 (9th Cir. 1981) ................................................................................................. 5

*UMG Recordings, Inc. v. Norwalk Distribs., Inc.*,
 No. SACV 02-1188 DOC (ANx), 2003 U.S. Dist LEXIS 26303 (C.D. Cal. June 12, 2003) .... 9

*United Wats, Inc. v. Cincinnati Ins. Co.*,
 971 F. Supp. 1375 (D. Kan. 1997) ........................................................................................ 7

*Veltman v. Norton Simon, Inc.*,
 425 F. Supp. 774 (D.C.N.Y. 1977) ...................................................................................... 11

*Wolk v. Green*,
 516 F. Supp. 2d 1121 (N.D. Cal. 2007) ................................................................................ 5

**STATUTES AND RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1, 5

Fed. R. Civ. P. 12(f) ............................................................................................................ passim

Fed. R. Civ. P. 13 .......................................................................................................................... 8

Fed. R. Civ. P. 41(a) ..................................................................................................................... 8

Fed. R. Civ. P. 41(a)(2) ................................................................................................................. 8

Fed. R. Civ. P. 57 ................................................................................................................1, 7, 10

**OTHER AUTHORITIES**

10B Charles Alan Wright, et al., *Federal Practice and Procedure* § 2758 (3d ed. 1998) ........7, 11

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Zynga's motion to dismiss or strike Vostu's counterclaims should be denied on the papers. Zynga does not even purport to assert that Vostu's counterclaims fail to allege facts sufficient to entitle Vostu to a declaration that its games do not infringe any Zynga copyright. For that reason alone, Zynga's motion fails under Rule 12(b)(6). The crux of Zynga's motion is that the Court should strike Vostu's counterclaims under Rule 12(f), but that request also fails for multiple reasons.

First, longstanding law from the Ninth Circuit and courts in this district is clear that, even if Vostu's counterclaims were simply "mirror images" of Zynga's complaint (which they *are not*), the Court should not automatically strike them. *See, e.g.*, *Maulsby v. Conzevoy*, 161 F.2d 165, 167 & nn. 5-6 (9th Cir. 1947); *Echostar Satellite LLC v. Freetech Inc.,* No. C 07-06124 (JW), 2008 U.S. Dist. LEXIS 123261, *8 (N.D. Cal. May 8, 2008) (Judge (now Chief Judge) Ware); *Castaline v. Aaron Muellers Arts,* No. C 09-02543 CRB, 2010 WL 583944, at *2 (N.D. Cal. Feb. 16, 2010) (Judge Breyer). On the contrary, as Judge Breyer has explained, the Court should not dismiss even mirror-image counterclaims if they "serve any useful purpose." *Castaline*, 2010 WL 583944, at *2 (quotations omitted). In this case, Vostu's counterclaims serve a number of important purposes:

(a) The counterclaims identify a broad range of relevant facts in the dispute that Zynga did not identify (and indeed avoided) in its complaint. The complaint artfully dodged facts concerning the lack of originality of many elements that Zynga claims, the fact that Zynga seeks primarily to protect ideas (either entirely in the abstract or as "merged" with expressions), the functionality of many of Zynga's claimed elements, and the standard nature of many of Zynga's elements in light of the stylized characteristics of the genres of games in the case. Because the counterclaims will require Zynga to admit or deny the allegations, the parties can narrow facts and issues on undisputed matters.

(b) The counterclaims allow Vostu to resolve the issues expeditiously because under Rule 57, Fed. R. Civ. P., "[t]he court may order a speedy hearing of a declaratory-judgment action." The faster this case addresses Vostu's numerous challenges to Zynga's claims, the less harm Zynga can inflict through collateral damage efforts. Moreover, as this Court knows, Zynga has sued in Brazil where, after preparing a case for five months, it took

1

1 advantage of instantaneous *ex parte* procedures to launch a surprise attack and where
2 discovery is much more limited than in the U.S. Discovery here may be useful in both cases.
3 As a practical matter, Vostu wants this case to move forward as quickly as possible so that
4 any discovery may be available for the Brazil case before that case concludes. Having the
5 same evidence available in both cases helps ensure consistent outcomes.

6       (c) The counterclaims here also guarantee that Vostu can force a final resolution
7 of the entire dispute. Zynga trumpeted its incendiary complaint with much fanfare, but ever
8 since Vostu expressed an interest in early mutual discovery Zynga has shown no interest in
9 moving this case forward. For example, Zynga, *the plaintiff in the case*, recently made the
10 incredible claim that it needed nearly a month to prepare for an initial Rule 26(f) conference
11 of counsel at Vostu's request. It is no secret what is going on here: Zynga publicized its
12 claims of infringement to freeze investment in and growth of an anticipated competitor, and
13 Zynga now wants to leave the pending claims dangling over Vostu like a Sword of
14 Damocles. Zynga's passive stance since Vostu's counterclaims further suggests that Zynga,
15 having accomplished its collateral damage objectives, may wish to dismiss this action
16 entirely to avoid the procedural protections and discovery of American courts in favor of
17 proceeding solely in Brazil. Vostu's counterclaims will deny Zynga that option.

18 Second, Vostu's counterclaims are *not* "redundant" of Zynga's affirmative claims, as Zynga
19 repeatedly and disingenuously contends. *See, e.g.*, Mot. at 1:12, 1:20, 4:7. Zynga concedes the
20 claim of "redundancy" is not true, because the numerous, well-pleaded allegations in Vostu's
21 counterclaims go far beyond what Zynga included in its complaint. Zynga tries to get around this
22 inconvenient fact by labeling Vostu's non-mirror-image allegations "irrelevant." *See id*. at 2:11,
23 3:10, 7:8. *Zynga cannot have it both ways*: Vostu's allegations cannot be both "redundant" of
24 Zynga's complaint and "irrelevant" to that complaint. The reality is that Vostu's allegations are
25 neither: Vostu's counterclaims identify a very broad range of relevant facts in the dispute—facts
26 that Zynga did not identify and indeed purposefully sidestepped—in its complaint. Issues related to
27 Zynga's "knowledge of Vostu," Zynga's "reputation among third parties" (in reality published
28 reports of Zynga's copying its games from others), "Zynga's communications with Vostu" (in

2

1  reality Zynga's business approaches to Vostu with no apparent concern about Vostu's games despite knowledge of the games), and the like are not "irrelevant." *Id*. at 7:9-10. They instead relate directly to core issues, including, among others, whether the game elements at issue are original to Zynga (and not copied from others), as is necessary for Zynga to claim copyright over them. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Zynga obviously would prefer to avoid admitting the truth of Vostu's allegations for as long as possible, but that is not a reason for striking Vostu's properly pleaded counterclaims.

The Court should deny Zynga's motion, and the Court can and should do so on the papers. Zynga noticed its hearing for February 17, 2012—*nearly five months from the filing of this opposition*. Waiting for the hearing delays Zynga's obligation to admit or deny the counterclaims' allegations and undercuts the purpose of the declaratory judgment procedure.

## II.   FACTUAL BACKGROUND

On June 16, 2011, Zynga sued the Vostu companies ("Vostu") for allegedly copying Zynga's business, game genres, ideas, and certain elements of its video games. Zynga's suit is far-reaching and challenges five Vostu games as well as Vostu's choice of game genres, its philanthropic activities, and even the color of Vostu's logotype. Zynga's complaint relies on a series of deceptively damning screen shots and accompanying allegations that take elements from each party's games out of context. Zynga's complaint omits facts about the social gaming industry and creative contexts in which both companies compete. The complaint avoided facts that undermine the scope of protection of Zynga's games and give the lie to Zynga's claims of substantial similarity of the parties' games. Zynga's complaint was as misleading as it was ostensibly detailed. Simultaneously with the filing of its complaint, Zynga took a number of actions to publicize this case and inflict collateral damage on its upcoming competitor. Zynga published its complaint to the public through the highly influential and widely followed blog TechCrunch, which immediately reacted to the complaint by condemning Vostu—all before Vostu even knew about the case or saw the complaint. Zynga uses the blogosphere as a weapon and its allegations in this case as the ammunition for that weapon, regardless of the truth of the allegations. Declaration of Carolyn Hoecker Luedtke ("Luedtke Dec.") ¶¶ 2, 3 and Exhs. A-B.

1  On July 20, 2011, Vostu answered Zynga's complaint and filed counterclaims on July 20, 2011. In addition to answering 86 paragraphs of allegations by Zynga, Vostu pleaded robust and fact-specific counterclaims seeking declarations that Vostu does not infringe any of the many rights that Zynga appears to claim. The allegations in Vostu's counterclaims go well beyond both the allegations of Zynga's complaint and Vostu's listing of its affirmative defenses, and include numerous, well-pleaded factual allegations that all relate directly to whether Vostu has infringed any Zynga copyright in any of the games in issue.

Since Vostu filed its counterclaims, Zynga has accelerated its litigation efforts elsewhere and has tried to "slow boat" this case. First, as this Court well knows, Zynga filed a parallel lawsuit in Brazil and, without providing Vostu any notice of the suit or its motion, sought and (initially) obtained an *ex parte* injunction. While that injunction has now been temporarily stayed, the fact remains that the discovery procedures in the two jurisdictions differ considerably, and critical documents and information relevant to the issues of non-infringement may be available only through discovery under the Federal Rules in this case.

Second, well aware of the procedural guarantees that apply in this Court, Zynga has demonstrated a commitment to having this case proceed as slowly as possible. Initially Zynga's counsel said it believed Vostu had copied Zynga's source code and Zynga wanted expedited discovery from Vostu to support a threatened preliminary injunction. When Vostu's counsel expressed its desire for expedited *mutual* discovery, with an immediate exchange of source code of both parties for an immediate comparison, Zynga's interest in discovery came to a screeching halt. Vostu communicated repeatedly to Zynga its desire for a prompt exchange of source code; Zynga dragged its feet. Vostu then formally requested a Rule 26(f) conference of counsel so that discovery could begin; Zynga said it would be unable to prepare for such a conference for three weeks, and it stalled both holding the Rule 26(f) conference and the opening of discovery. Luedtke Dec ¶¶ 4-9 and Exh. C-E. It is remarkable for such a hard-hitting plaintiff—and one so vigorous in the later-filed Brazil litigation—to become so completely inert in its *first-filed* case in its *home* court. Zynga's delay and passivity here since it filed the Brazil action underscore why Vostu's declaratory relief counterclaims serve such important purposes. Zynga's actions suggest that, having discovered

4

the procedural advantages of a foreign jurisdiction with minimal discovery and with *ex parte* communications between litigants and courts, Zynga may simply seek to dismiss this case without prejudice so that it can confine the dispute to a trial by ambush in Brazil while leaving the broader dispute in the United States unresolved and hanging over Vostu's head, even (or especially) in case the Brazilian courts rule in Vostu's favor. As we explain below, Zynga's abusive tactics cannot succeed so long as Vostu's counterclaims proceed here.

### III. ARGUMENT

#### A. Legal Standard: The Application of Rules 12(b)(6) and 12(f)

Zynga brings its motion under Federal Rules of Civil Procedure 12(b)(6) and 12(f). Rule 12(b)(6) allows dismissal when a claimant fails to state a claim upon which relief can be granted. For purposes of Rule 12(b)(6), the court presumes the truth of all factual allegations in the challenged pleading and draws all reasonable inferences in favor of the non-moving party. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000). When considering a Rule 12(b)(6) motion, the "court may not look beyond" the challenged pleading. *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The focus of any Rule 12(b)(6) dismissal ... is the complaint.") Dismissal is only proper in "extraordinary" cases. *U.S. v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). *Here, Zynga does not even assert that Vostu's counterclaims themselves fail to state claims* for relief. Dismissal under Rule 12(b)(6) is therefore improper.

The core of Zynga's motion, instead, is that Vostu's counterclaims are redundant. Rule 12(f) is the relevant rule for redundant claims, not Rule 12(b)(6). *Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050, 2007 WL 2729214, at *9-10 n.3 (N.D. Cal. Sep. 18, 2007) (citing Fed. R. Civ. P. 12(f)). Rule 12(f) permits the "court [to] strike from a pleading . . . any redundant . . . matter." "Motions to strike are disfavored, and the remedy of striking a pleading should generally be granted only to avoid prejudice to the moving party or when it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Wolk v. Green*, 516 F. Supp. 2d 1121, 1133-34 (N.D. Cal. 2007). "Rule 12(f) Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delay

tactic." *In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007). "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *Id.*

**B.  Vostu's Counterclaims Are Appropriate and Valuable in This Case.**

Zynga mischaracterizes Vostu's counterclaims as "mirror image." In fact, as shown above, while the claims and counterclaims both concern copyright infringement, the factual allegations are anything *but* mirror-image. Vostu's counterclaims have reframed this dispute by expanding the allegations to capture a fuller range of key facts in this complex case. It is significant that Zynga tried to reframe the dispute in Brazil: the complaint it filed there, after facing Vostu's counterclaims here, relied upon a vastly different, but similarly deceptive, selection of elements from the very same games at issue in both cases. Zynga's dramatic shift in two different cases, involving exactly the same games, reveals the importance of Vostu's counterclaims in framing the case.

In any event, as a legal matter, the mischaracterization of Vostu's counterclaims as "mirror image" does not actually support striking the counterclaims. Courts routinely allow declaratory relief counterclaims in contexts such as this.

**1.  Many Courts, Including the Ninth Circuit and This Court, Endorse So-Called "Mirror Image" Counterclaims.**

The Ninth Circuit has held that courts should not dismiss so-called "mirror-image" counterclaims at the pleadings stage because they serve legitimate purposes and are entirely proper. *Maulsby v. Conzevoy*, 161 F.2d 165, 167 & nn.5-6 (9th Cir. 1947), affirmed, after a full trial, the district court's decision to keep declaratory relief counterclaims in the lawsuit; it cited favorably other courts' approvals of mirror-image counterclaims. The Ninth Circuit held there was no "valid objection" to such counterclaims. *Id.* There could be no prejudice in hearing the counterclaims, which the court could easily dismiss after trial if appropriate, and which would impose no additional burden on the Court if truly identical. *Id.*

Decisions on point from this District have long permitted "mirror-image" declaratory judgment counterclaims. *See, e.g., Int'l Woodworkers of Am. v. McCloud River Lumber Co.*, 119 F. Supp. 475, 488 (N.D. Cal. 1953). In that case the court ruled that a defendant's "counterclaim for a

6

declaratory judgment is permissible" even when it "rais[es] the same issues as those brought up by the plaintiff's first cause of action and the defendant's answer thereto." *Id.* Recent decisions take the same position. In a copyright infringement case similar to this one, Judge Ware observed that counterclaims for declaration of non-liability "are now commonly allowed." *Echostar,* 2008 U.S. Dist. LEXIS 123261, at *8. *See also Castaline v. Aaron Muellers Arts,* No. C 09-02543 CRB, 2010 WL 583944, at *2 (N.D. Cal. Feb. 16, 2010) (declining to dismiss counterclaims for noninfringement of trademarks). "There was once some question whether a counterclaim based upon essentially the same facts as the original claim should be dismissed as redundant, but . . . counterclaims of this kind are now commonly allowed." 10B Charles Alan Wright, et al., *Federal Practice and Procedure* § 2758 (3d ed. 1998).

Courts outside the Ninth Circuit agree that "[m]erely because a counterclaim repeats the issues raised in the original complaint does not automatically warrant dismissal." *Caplan v. Am. Baby, Inc.*, 582 F. Supp. 869, 870 (S.D.N.Y. 1984) (argument to dismiss mirror-image counterclaims was "without merit"); *accord Oneida Tribe of Indians of Wis. v. Village of Hobart*, 500 F. Supp. 2d 1143, 1150 n.3 (E.D. Wis. 2007); *Dominion Elec. Mfg. Co. v. Edwin L. Wiegand Co.*, 126 F.2d 172, 174-75 (6th Cir. 1942); *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1381 (D. Kan. 1997); *Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc.*, 457 F. Supp. 1158, 1161-62 (E.D. Pa. 1978) ("Courts have declined to fashion a rule preventing the assertion of a counterclaim merely because the theory relied upon is the converse of that in the complaint."). In fact, permitting "mirror-image" counterclaims to go to trial is the "majority rule" and "the better policy." *Oneida Tribe of Indians of Wis.*, 500 F. Supp. 2d at 1150 n.3.

### 2. The Federal Rules Support Declaratory Relief Counterclaims.

The Federal Rules of Civil Procedure support declaratory relief counterclaims by allowing declaratory judgments even in the face of another adequate remedy and by *requiring* that a defendant bring as counterclaims any claims arising from the same transaction or occurrence as the complaint.

Federal Rule of Civil Procedure 57, which governs actions for declaratory relief, implicitly endorses such counterclaims when it states that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. Accordingly,

7

even if merely surviving a plaintiff's claims would be an "adequate remedy," a declaratory judgment action may proceed. Moreover, as the court observed in *Employer Ins. of Wausau v. Pacer Int'l, Inc.*, No. 04-4563, 2005 WL 61481 (N.D. Ill. Jan. 11, 2005), a declaratory relief counterclaim "is by no means unusual; it is also, in all likelihood, compulsory" under Federal Rule of Civil 13 (counterclaims). *Id*. at *3 (collecting cases). Thus, even a defendant with "arguably redundant" counterclaims must bring them or risk waiving them. *Id.*

### 3. Counterclaims Authorize a Defendant to Insist on a Resolution of the Issues.

Declaratory relief counterclaims allow a defendant to insist upon resolution of the claims, even if a plaintiff attempts to dismiss their case. Judge Ware summed up the reasoning:

> Since the alleged conduct is of a continuing nature, were Plaintiffs to decide to dismiss this case, they would be free to bring an entirely new action based on substantially the same allegations. Defendant's counterclaims allow the Court to determine the rights and obligations of Defendant with respect to the products and services it provides whether or not Plaintiffs dismiss. Defendant is entitled to have the issue of its liability resolved now that it has been put in controversy by Plaintiffs.

*Echostar*, 2008 U.S. Dist. LEXIS 123261, at *9. It is true that Rule 41(a) prevents a plaintiff from dismissing without prejudice without the approval of either the defendant or the court once the defendant answers. Fed R. Civ. P. 41(a). But as Judge Ware noted above, where the alleged infringement is ongoing, a plaintiff can easily bring another complaint after unilaterally dismissing a case. Declaratory relief counterclaims also allow a defendant to invoke Rule 41 and insist that the Court resolve the parties' differences even if the plaintiff, at a later date, dismisses all or some of its claims under Rules 41 or 15.[1] Defendants who have asserted counterclaims enjoy additional protection. "If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." Fed. R. Civ. P. 41(a)(2). The Sixth Circuit realized the importance of mirror-image counterclaims under these circumstances. "Rule 41 affords some measure of protection to defendants, yet it is limited to a dismissal upon such terms and

---

[1] Rule 15, which governs amendments to pleadings, governs motions for the voluntary dismissal of particular claims.

8

conditions as the court deems proper." *Dominion Elec.*, 126 F.2d at 174 (reversing district court's dismissal of mirror-image counterclaims). Vostu's counterclaims, therefore, are an important safeguard: they will entitle it to a determination of its rights even if Zynga decides to cut and run. When litigation here is merely part of a larger attack on a competitor, as simply one front that the plaintiff may abandon in the interest of the larger war, a defendant's ability to insist on a determination of its rights is particularly important.

As noted above, Zynga's recent conduct, including its remarkably passive approach to this case in the midst of an otherwise heated dispute, suggests that Vostu needs the protection that counterclaims afford to thwart abusive tactics by Zynga.

### 4. In Intellectual Property Cases Such As This One, Counterclaims for a Declaration of Non-Liability Are Particularly Valuable.

The rule in intellectual property cases is that courts should allow counterclaims for declarations of non-liability when the counterclaims question the validity or scope of the intellectual property rights at issue.[2] "In the patent and trademark realm, courts have found that counterclaims alleging patent or trademark invalidity should not be dismissed as redundant under Rule 12(f)." *Castaline*, 2010 WL at *2. The same issue of possible challenges to validity applies to copyright cases. *See, e.g.*, *Echostar*, 2008 U.S. Dist. LEXIS 123261.[3] Here, the focus is on the proper scope of protection for Zynga's games in light of the full context that Zynga so carefully obscured in its complaint. Vostu challenges the scope of protection available for Zynga's works. Now that Zynga

---

[2] In one of Zynga's cited cases the court could not reach a holding on the merits because the defendants did not challenge dismissal of their allegedly mirror-image counterclaims. *UMG Recordings, Inc. v. Norwalk Distribs., Inc.*, No. SACV 02-1188 DOC (ANx), 2003 U.S. Dist LEXIS 26303, at *3 (C.D. Cal. June 12, 2003) (noting that defendant did not counter plaintiff's argument to dismiss counterclaims).

[3] Zynga cites a number of copyright cases that dismissed declaratory relief counterclaims, but they are all file-sharing cases. *See, e.g.*, *Atlantic Recording Corp. v Serrano*, 2007 U.S. Dist. LEXIS 95203 (S.D. Cal. Dec. 28, 2007); *Interscope Records v. Duty*, No. 05-CV-3744-PHX-FJM, 2006 U.S. Dist. LEXIS 20214 (D. Ariz. April 14, 2006); *Interscope Records v. Kimmel*, No. 3:07-CV-0108, 2007 U.S. Dist. LEXIS 43966 (N.D.N.Y. June 18, 2007). None of these cases involve the critical and wide-ranging challenges to protectability of numerous elements of extraordinarily complex works and the issue of probative similarity of alleged non-literal copying involved in Vostu's counterclaims. As in the patent and trademark contexts, counterclaims for declarations of non-liability that raise questions about the validity and scope of copyrights should not be dismissed.

has sued it twice, Vostu deserves the chance to establish that Zynga's games deserve only limited protection.

### 5. Sound Case Management Favors Vostu's Counterclaims.

Principles of sound case management also support Vostu's counterclaims. The counterclaims narrow the issues, speed resolution of claims, and promote finality. All of these things increase judicial efficiency, with benefits to the courts and to litigants.

Zynga obviously does not want to answer Vostu's counterclaims. The counterclaims contain specific allegations about the broader context of Zynga's claims, as well as allegations about Zynga's own behavior, that it would rather duck than address. Keeping Vostu's counterclaims in the case will secure Zynga's answers to these allegations and will narrow and focus the issues, thereby conserving judicial resources. Zynga's responses may also include factual admissions that clarify the scope of disagreements and pave the way for an early dispositive motion or potential settlement. Obtaining key admissions through pleadings also avoids the objections, motion practice, and other time-consuming difficulties of the discovery process, quickly streamlining the case. Zynga may wish to postpone facing the facts Vostu has alleged, but the equities favor speedily defining the crux of the dispute.

Counterclaims for declarations of non-liability also "[e]nsure resolution of the dispute is not delayed." *Wasau*, 2005 WL 61481, at *3. In fact, they are likely to speed resolution. First, and most explicitly, under Federal Rule of Civil Procedure 57 a "court may order a speedy hearing of a declaratory-judgment action." Fed. R. Civ. P. 57. Just as important, though, allowing counterclaims for declarations of non-liability puts the defendant in the plaintiff's seat and gives both parties the procedural initiative and incentive to finish the case quickly. Especially where Zynga seems content to let this case languish because it has latched onto another jurisdiction with fewer procedural protections for defendants, has focused on other ways to force an erstwhile competitor out of business, or has simply gotten cold feet, Vostu should have the power to drive the case to resolution.

Finally, declaratory relief counterclaims prompt more complete adjudication of a dispute. The "mere dismissal of a plaintiff's bill does not always adjudicate every aspect of the controversy or give the defendant all the relief to which he may be entitled." *Dominion Elec.*, 126 F.2d at 174.

10

1    Thus, it is best to wait for trial, when the contours and overlaps of claims and counterclaims will
2    become clearer. There is no need to dismiss claims hastily, at the pleadings stage, without full
3    knowledge. *Oneida Tribe of Indians of Wis.*, 500 F. Supp. 2d at 1150 n.3.

### C. It Is Particularly Inappropriate to Strike Declaratory Relief Counterclaims Before Factual Development.

Due to the high standard for striking material under Rule 12(f), and due to the usefulness of counterclaims for declarations of non-liability, the better course is to allow such claims to proceed past the pleadings stage. Even the cases Zynga cites bear this out. *Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 2050990, at *5 (N.D. Cal. May 13, 2008), acknowledges that "early dismissal of a counterclaim under Rule 12(f) might be premature in some cases."[4] "Doing so might 'ignore[ ] the possibility that it is very difficult to determine whether the declaratory judgment counterclaim really is redundant prior to trial.'" *Id.* (quoting 6 Wright, et al., § 1406) (alteration in original). Once the case develops further, the court might consider dismissing declaratory relief counterclaims if they do not assist in shaping the case, but that has no bearing here.[5] At the pleading stage, however, it is difficult to predict what additional important issues a counterclaim for a declaration of non-liability will illuminate. And, in any event, even if a counterclaim were entirely duplicative, there is no additional burden in pursuing it.

---

[4] *Stickrath*, in fact, noted that intellectual property cases are particularly unsuited to dismissal of declaratory counterclaims. *Id.*

[5] Many of the cases Zynga cites occur in entirely different procedural postures. *Avery Dennison Corp. v. Acco Brands, Inc.*, No. CV 99-1877 DT (Mcx), 2000 WL 986995, (C.D. Cal. Feb. 22, 2000) (dismissing counterclaims after a year of litigation, when plaintiff moved for summary judgment); *Infa-Lab, Inc. v. KDS Nail Int'l*, No. 2:07-01270 WBS WFB, 2008 WL 4793305 (E.D. Cal. Oct. 27, 2008) (denying defendant's motion for leave to add a counterclaim more than one year after it filed its answer); *Federal Deposit Ins. Corp. v. Bancinsure, Inc.*, 770 F. Supp. 496, 497-98 (D. Minn. 1991) (rejecting a counterclaim on a motion for summary judgment six months into litigation and years into investigation of the issues); *Rayman v. Peoples Sav. Corp.*, 735 F. Supp. 842, 851-52 (N.D. Ill. 1990) (denying motion for leave to file a counterclaim). Even farther afield, Zynga also cites cases dismissing counterclaims *after adjudication of the claims in the complaint*. *See Aldens, Inc. v. Packel*, 524 F.2d 38, 51-52 (3rd Cir. 1975) (dismissing mirror-image declaratory relief counterclaim as moot after granting summary judgment); *Veltman v. Norton Simon, Inc.*, 425 F. Supp. 774, 776 (D.C.N.Y. 1977) (dismissing the original action and then dismissing the counterclaim for declaratory judgment as moot).

11

## IV. CONCLUSION

Vostu has asserted counterclaims that far better define this lawsuit than Zynga's complaint. Vostu's counterclaims articulate many facts and issues in the case in order to narrow the issues upon Zynga's response and to establish the proper scope of protection for Zynga's copyrights. The counterclaims are proper under the Federal Rules. By narrowing the facts and issues truly in dispute at the outset, they will expose hollow claims and move the litigation along more expeditiously.

In light of the stringent standard of a disfavored Rule 12(f) motion, the proper course is to keep Vostu's counterclaims in this case and reject Zynga's efforts to avoid or delay responding to the allegations. For these reasons, Vostu respectfully requests that the Court deny Zynga's motion upon completion of the briefing and without waiting months for the noticed hearing.

Dated: September 20, 2011.　　　　　Respectfully submitted,

WINSTON & STRAWN LLP

By: /s/
　　　Andrew P. Bridges
　　　Jennifer A. Golinveaux

MUNGER TOLLES & OLSON LLP
Carolyn Hoecker Luedtke
Attorneys for Defendant and Counterclaimant Vostu, Inc.